IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SAMANTHA PERINO
JEANNIE HETHERINGTON,
JESSICA DENNISON, and
JILL DUSENBERRY,

      Plaintiffs,

vs.                                           CIV No. 07-00144 LH/WDS

GLENN SLAUGHTER, in his individual and
official capacities with New Mexico State Police;
BOB MELTON, in his individual and official
capacities; JOHN DOES 1 THOROUGH 25, each in
their individual and official capacities; SAN JUAN
COUNTY, NM and its subsidiary the SAN JUAN
COUNTY SHERIFF'S DEPARTMENT; and
ANONYMOUS SOURCES 1 through 3,

      Defendants.

## DEFENDANT SLAUGHTER'S AMENDED TRIAL BRIEF

Defendant Glenn Slaughter (Agent Slaughter), through his attorneys Robles, Rael & Anaya, P.C. (Terri Sauer Beach), states the following for his Amended Trial Brief:

### INTRODUCTION

In his brief, Agent Slaughter will address certain legal issues which he respectfully believes that this Court should consider prior to conducting the jury trial in this matter. First, Agent Slaughter will explain why Special Interrogatories are necessary for him to assert and for this Court to decide his qualified immunity defense. Second, Agent Slaughter will review the clearly established law which controls Plaintiffs' Fourth Amended illegal search and seizure claims as well as Plaintiffs' state law false imprisonment, assault and battery claims. Third, Agent Slaughter attached his

proposed Special Interrogatories as Exhibit A.

**I.     FOR THIS COURT AND THE JURY TO PROPERLY DECIDE CITY DEFENDANTS' QUALIFIED IMMUNITY DEFENSE, SPECIAL JURY INTERROGATORIES ARE NECESSARY.**

Throughout this litigation, Agent Slaughter has raised the defense of qualified immunity. In cases such as this, qualified immunity is intended to provide a margin of error for government officials even when they have acted unconstitutionally so as not to chill them unduly in the exercise of their authority. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Because of the purpose served by the doctrine of qualified immunity, a defendant should raise this defense as soon as possible, preferably at the motion to dismiss or summary judgment stage of the litigation. See Saucier v. Katz, 533 U.S. 194, 201 (2001) (citing Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

"Even at the summary judgment stage, not all defendants entitled to the protection of the qualified immunity defense will get it." Johnson v. Breeden, 280 F.3d 1308, 1317 (11th Cir. 2002). Accordingly, the Tenth Circuit allows defendants who unsuccessfully raised the defense of qualified immunity before trial to reassert such defense "at trial or after trial." Quezada v. County of Bernalillo, 944 F.2d 710, 718 (10th Cir. 1991); see also Myers v. Okla. County Bd. of County Comm'rs, 151 F.3d 1313, 1319 (10th Cir. 1998). More precisely stated, a defendant, having unsuccessfully raised his qualified immunity defense before trial, can re-assert it at trial and at the end of plaintiffs' case in a Fed.R.Civ.P. 50(a) motion. Maestas v. Lujan, 351 F.3d 1001, 1007 (10th Cir. 2003) ("the district court properly sent the qualified immunity issue to the jury."); Fed.R.Civ.P. 50(a); Cottrell v. Caldwell, 85 F.3d 1480, 1488 (11th Cir. 1996) ("[w]hen a district court has denied the qualified immunity defense prior to trial based upon its determination that the defense turns upon a genuine issue of material fact, the court should revisit that factual issue when, and if, the defendant

files a timely Fed.R.Civ.P. 50(a) or (b) motion.").

When qualified immunity is raised at trial, the Tenth Circuit stated the following:

> [a]lthough issues of qualified immunity normally are questions of law decided prior to trial, in exceptional circumstances historical facts may be so intertwined with the law that a jury question is appropriate as to whether a reasonable person in the defendant's position would have known that his conduct violated that right. But even under such special circumstances, whether plaintiffs' claim asserts a violation of a constitutional right and whether this right was clearly established at the time remain questions of law.

Maestas, 351 F.3d at 1008-009 (citations omitted); Cottrell, 85 F.3d at 1488 (citations omitted) ("[w]here the defendant's pretrial motions are denied because there are genuine issues of fact that are determinative of the qualified immunity issue, special jury interrogatories may be used to resolve those factual issues. Because a public official who is put to trial is entitled to have the true facts underlying his qualified immunity defense decided, a timely request for jury interrogatories directed toward such factual issues should be granted. Denial of such a request would be an error, because it would deprive the defendant who is forced to trial of his right to have the factual issues underlying his defense decided by the jury").

Similarly, this Court may deny a Rule 50(a) motion because Plaintiffs' evidence at trial may include the same evidence that would have led to the denial of Agent Slaughter's summary judgment motion. See Johnson, 280 F.3d at 1317-18. Sometimes, however, the evidence that is considered at the summary judgment stage may turn out to be inadmissible at trial. See id. at 1318 (citing Wright v. Southland Corp., 187 F.3d 1287, 1304 n. 21 (11th Cir. 1999); McMillian v. Johnson, 88 F.3d 1554 (11th Cir. 1996)). "Where there is no change in the evidence, the same evidentiary dispute that got the plaintiff past a summary judgment motion asserting the qualified immunity defense will usually get that plaintiff past a Rule 50(a) motion asserting the defense, although the district court

3

is free to change its mind." Johnson, 280 F.3d at 1318 (citing Abel v. Dubberly, 210 F.3d 1334 (11th Cir. 2000)).

Regardless of the evidentiary hurdles facing him, Agent Slaughter is entitled to have any evidentiary disputes upon which qualified immunity defense turns decided by the jury so that this Court can apply the jury's factual determinations to the law and enter a verdict of a Rule 50 post-trial decision on the defense, if warranted. See, e.g., McNair v. Coffey, 279 F.3d 463, 476-78 (7th Cir. 2002) (concurring opinion). "When this case goes to trial, the jury itself decides the issues of historical fact that are determinative of the qualified immunity defense, but the jury does not apply the law relating to qualified immunity to those historical facts it finds; that is this Court's duty." Johnson, 280 F.3d at 1318 (citing Stone v. Peacock, 968 F.2d 1163, 1166 (11th Cir. 1992); Ansley v. Heinrich, 925 F.2d 1339, 1348 (11th Cir. 1991)).

In Johnson, the Eleventh Circuit explained the value of special interrogatories in a case in which a defendant asserts a qualified immunity defense:

> [a] tool used to apportion the jury and court functions relating to qualified immunity issues in cases that go to trial is special interrogatories to the jury. "Qualified immunity is a legal issue to be decided by the court, and the jury interrogatories should not even mention the term. Instead, the jury interrogatories should be restricted to the who-what-when-where-why type of historical fact issues." Cottrell, 85 F.3d at 1488 (internal citations omitted). In a proper case, the use of special jury interrogatories going to the qualified immunity defense is not discretionary with the court. As we said in Cottrell, "[b]ecause a public official who is put to trial is entitled to have the true facts underlying his qualified immunity defense decided, a timely request for jury interrogatories directed toward such factual issues should be granted." Id. at 1487. In the same opinion, we explained: "Denial of such a request would be error, because it would deprive the defendant who is forced to trial of his right to have the factual issues underlying his defense decided by the jury." Id. at 1487- 88; see also See (sic) Willingham v. Loughnan, 261 F.3d 1178, 1184 n. 9 (11th Cir. 2001) ("[W]hen the question of qualified immunity turns on specific questions of fact, the use of special interrogatories can be very helpful to a judge in determining the legal question of whether qualified immunity applies.").

4

Johnson, 280 F.3d at 1318; see also McNair, 279 F.3d at 476-78; Kitchens v. Bryan County Nat. Bank, 825 F.2d 248, 251 (10th Cir. 1987) ("The jury. . . has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact."); Littrell v. Franklin, 388 F.3d 578, 585 (8th Cir. 2004) ("[o]n the facts of this case, special interrogatories should have asked (1) whether Ms. Littrell resisted arrest before Officer Franklin forcibly restrained her and (2) whether Officer Franklin knew Ms. Littrell was injured when he continued to handcuff and forcibly place her in the car. Specific findings on these questions of fact would have enabled the district court to address the legal issue of qualified immunity through reference to excessive force standards that are clearly established.").

## II. REVIEW OF THE APPLICABLE FOURTH AMENDMENT, § 1983 SUPERVISORY CLAIM, AND STATE TORT LAW.

In their Complaint, Plaintiffs allege that Agent Slaughter violated their Fourth Amendment rights to be free from unreasonable searches and seizures. Plaintiffs' Complaint also contains claims of assault and battery against Agent Slaughter under the New Mexico Tort Claims Act.

### A. TO STATE AN ACTIONABLE 42 U.S.C. § 1983 CLAIM, PLAINTIFFS MUST PROVE THAT AGENT SLAUGHTER PERSONALLY PARTICIPATED IN THE DEPRAVATION OF THEIR RIGHTS AGAINST ILLEGAL SEARCH AND SEIZURE.

"If the Court is to hold police officers personally liable for violating a citizen's constitutional rights, the Court needs the evidence to provide a sound basis for concluding that the officer is the one who violated the Constitution." Sisneros v. City of Albuquerque, No. Civ. 02-1035 JB/KBM, slip op. at 14 (D.N.M. filed November 7, 2003) [Doc. No. 35] (dismissing excessive force claim against certain officers and stating that plaintiff "cannot prove, what, if anything, any of the officers

did to him.") (citations omitted). The law is clear in the Tenth Circuit that "[i]ndividual liability under §1983 must be based on personal involvement in the alleged constitutional violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10 Cir. 1997); Mitchell v. Maynard, 80 F.3d 1433, 1441 (th 10th Cir. 1996). This is an essential element of proof. Id.; Scull v. New Mexico, 236 F.3d 588, 599 (10th Cir. 2000) (stating that "none of the BCDC Appellees was involved in the delay" and "[c]onsequently, Mr. Reed has no § 1983 claims against the BCDC Appellees, regardless of the lawfulness of the detention."). It is not enough for a plaintiff to merely allege a violation of his constitutional rights. Panaderia La Diana, Inc. v. Salt Lake City Corp., 342 F.Supp.2d 1013, 1031 (D. Utah 2004), aff'd, Trevizo v. Adams, 455 F.3d 1155 (10th Cir. 2006).

In Jenkins v. Wood, 81 F.3d 988 (10th Cir. 1996), for example, the Tenth Circuit addressed a situation analogous to the one before this Court. Agents with the Kansas Bureau of Investigation ("KBI") and officers with the City of Topeka Police Department executed a search warrant, using a "flash bang" while making entry. Id. at 991. Upon hearing the commotion and not knowing who was in his home, James Jenkins ran to grab a shotgun which was kept downstairs. Id. As he emerged from his bedroom, Mr. Jenkins was met by two law enforcement officers who told him to drop the gun, get on the floor and put his hands behind his back. Id. The officers handcuffed him face-down on the floor at gunpoint and asked him questions about the location of his son. Id. One of the officers was a member of the Topeka Police Department and the other was a KBI agent. Id. According to Mr. Jenkins, the KBI agent was a slender, white man of medium height, and in his mid-forties. Id. Otherwise, Mr. Jenkins could not identify the agent. Id. Another officer met Mr. Jenkins' wife, Lula Jenkins, at gun point and ordered her down the stairs. Id. That officer ordered Mrs. Jenkins to lay on the floor in a spread-eagle position. Id. Mrs. Jenkins was not handcuffed but was held at gunpoint

prostrate on the floor for about twenty minutes. Id. at 992. At one point, a second officer walked up to Mrs. Jenkins, pointed his gun at her head and threatened to shoot her if she did not tell him where her son was located. Id. Other than to say that this officer was a "'real big guy . . . kind of casually dressed,'" Mrs. Jenkins could not identify him. Id. While lying on the floor, Mrs. Jenkins pleaded with officers to let her help her younger daughter with her inhaler as she suffered from asthma and was having difficulty breathing. Id. An officer told her "if she didn't shut her 'goddamn mouth . . . he was going to slap the shit out of her.'" Id. The Tenth Circuit affirmed the dismissal of Mr. and Mrs. Jenkins' excessive force claims against Agent Sabel, concluding:

> the evidence is not sufficient to implicate Agent Sabel as a personal participant in the alleged violations. First, Mr. and Mrs. Jenkins have brought forward no evidence indicating Agent Sabel participated in the use of excessive force against them personally . . .. Though Mr. and Mrs. Jenkins have detailed some disturbing behavior to support claims of excessive force, their allegations relate to the time period when they were held-face-down on the floor at gunpoint . . .. [T]here is no logical or evidentiary support for the proposition that Agent Sabel participated in what happened before he came downstairs . . .. As with Agent Wood, neither Mr. nor Mrs. Jenkins identified Agent Sabel as one of the officers who subjected them personally to excessive force.

Id. at 995. In his concurring opinion, Judge Henry noted that the plaintiffs, though possibly wronged, could "not rely on a constitutional tort for solace." Id. at 998; see Sharrar v. Felsig, 128 F.3d 810, 821 (3 Cir. 1997) (affirming district court's decision to grant summary judgment as plaintiff was unable to identify which police officers were responsible for his alleged abuse, and thus, there was no evidentiary basis upon which the named defendants could be held liable for the alleged violation of plaintiff's rights).

The district court's decision in Panaderia La Diana, Inc., 342 F.Supp.2d 1013 is also instructive.

In that case, owners, employees and customers of a Latino-owned business brought a §1983 action against the city and police officers stemming from the execution of a narcotics-related search warrant on the premises. The warrant was executed by at least seventeen (17) officers from the Salt Lake City Police Department and additional officers from Davis County, the INS, DEA and FBI. Id. at 1016 & 1033. The officers wore masks during the raid for safety purposes. Id. at 1033. Law enforcement officers detained approximately 80 individuals including children, pregnant women and elderly individuals who were owners, employees and patrons of the establishment. Id. at 1020. Officers secured everyone by displaying their firearms, ordering everyone present to the ground and then handcuffing everyone with plastic ties. Id. at 1019. Nearly all were handcuffed and detained for as long as three hours. Id. at 1016. The plaintiffs made numerous allegations including involuntary searches of their persons, purses, wallets and vehicles, as well as the use of excessive force, being subjected to profanity and other derogatory comments, being subjected to drug sniffing dogs and being questioned about their identities and immigration status before they were released. Id. at 1020-1029. One plaintiff was accompanied to the bathroom but his handcuffs were not removed. Id. at 1021. Instead, the officer unzipped his pants for him. Id. In the end, six arrests were made and no drugs or weapons were found inside the business. Id. at 1020. The plaintiffs made an effort to identify the officers who participated in the warrant execution but were unable to match up their claims against specific officers. Id. at 1031. The district court recognized that this situation created a dilemma and posed the following question: "[i]f constitutional violations occurred, why should plaintiffs have no redress simply because the officers who committed the violations wore masks and could not be identified?" Id. at 1032. Nonetheless, the court rejected the suggestion that it shift the burden to the defendants to identify the participants, reasoning as follows:

> If there were evidence that the identity of officers has been concealed for the purpose of preventing suit, this approach might be appropriate.
>
> * * *
>
> [Additionally,] [i]n a case of only one plaintiff and two defendants such an approach might be feasible. However, in this case we have 19 plaintiffs and at least 17 Salt Lake City officers. In addition, agents from Davis County, the FBI, the DEA, and the INS participated in the raid. Moreover, each of the [defendants] likely encountered more than one plaintiff and each plaintiff likely encountered more than one of the defendants during the raid. It is simply impracticable to shift the burden in this case. More important, it was made clear in the pleadings and during oral arguments that the plaintiffs did not do everything they could have during discovery to discover the identities of individual officers. The plaintiffs, for example, could have deposed the officers with the plaintiffs present and asked the plaintiffs to attempt to identify officers they had contact with. Plaintiffs could also have requested discovery earlier in the process.
>
> * * *
>
> In this case, there is no evidence of any policy intentionally designed to thwart the identification of officers for the purpose of avoiding suit. The SWAT team does wear masks, but this is a common practice for all SWAT teams and apparently has safety purposes. Moreover, as was noted above, the court cannot say that the plaintiffs made a sufficient attempt to identify the officers individually.

Id. at 1032-33. Based on the foregoing, the court granted summary judgment in favor of the defendant officers. Id. at 1034.[1] The Tenth Circuit upheld the district 3 court's decision, noting that "neither physical presence on the premises, nor vague, generalized statements from others suggesting that 'pretty much everyone was treated the same way' . . . is sufficient to constitute 'specific facts showing there is a genuine issue for trial as to the essential elements' of these plaintiffs' claims." Treviso, 455 F.3d at 1160.

---

[1] Taylor v. Brockenbrough, 2001 WL 1632146 at *2-3 (E.D. Pa. 2001) (noting that where either plaintiff nor any witness could identify which of the six police officers allegedly used excessive force or unlawfully detained him, asking the jury to decide which officer was responsible "would be tantamount to asking it to perform guesswork" and "[d]efendants have the right not to be tried under such circumstances."); Shilo v. City of Portland, 2005 WL 2083014 at * 8 (D. Or. 2005) (magistrate judge recommended that plaintiffs' excessive force claims be dismissed because plaintiffs were unable to identify any of the individually named officers as being involved in their respective claims of excessive force during the execution of a search warrant).

All Plaintiffs in this case have asserted Fourth Amendment illegal search and seizure claims against Agent Slaughter. To prevail on their claims, each Plaintiff must show that Agent Slaughter personally participated in each of the constitutional infractions that particular Plaintiff has alleged. They each must show "a deliberate, intentional act by [Agent Slaughter] . . . to violate constitutional rights." Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir.1992) (citing City of Canton, Ohio v. Harris, 489 U.S. at 389, 109 S.Ct. at 1205). It is not enough for the Plaintiffs to show that Agent Slaughter was in charge of other law enforcement officers who actually committed the alleged violation. Jenkins v. Wood, 81 F.3d 988, 994 C. A.10 (Kan.),1996. Instead, Plaintiffs must show that Agent Slaughter personally ordered the alleged visual body cavity searches, had actual knowledge of the alleged violation and acquiesced in its continuance (Id., citing Woodward 977 F.2d at 1400) or that he set in motion a series of events that he knew or reasonably should have known would cause the deputies to conduct visual body cavity searches of the Plaintiffs. Snell v. Turner, 920 F.2d 673, 700 (10th Cirt. 1990).

> **B. TO STATE AN ACTIONABLE 42 U.S.C. § 1983 SUPERVISORY LIABILITY CLAIM, PLAINTIFFS MUST PROVE THAT AGENT SLAUGHTER PERSONALLY PARTICIPATED AND EITHER EXERCISED CONTROL OVER, DIRECTED THE ACTIONS OF, OR FAILED TO SUPERVISE THE DEPUTIES WHO DEPRIVED PLAINTIFFS OF THEIR FOURTH AMENDMENT RIGHTS AGAINST ILLEGAL SEARCH AND SEIZURE.**

Having sued Agent Slaughter in his individual capacity, Plaintiffs must prove that Agent Slaughter personally participated in the alleged violation of Plaintiffs' Fourth Amendment rights. Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996) ("personal participation is an essential allegation in a § 1983 claim.") (internal quotation omitted). There is no respondeat superior liability under § 1983: "[s]upervisors are not strictly liable

for the torts of their underlings; instead, they are liable only when they personally participated in the alleged violation." Bryson v. Gonzales, 534 F.3d 1282, 1289 (10th Cir. 2008) (quotation omitted). Therefore, the Tenth Circuit has held that a supervisor cannot be held liable for his employees' actions based solely on his supervisory position. Serna v. Colo. Dep't of Corr., 455 F.3d 1146, 1151 (10th Cir. 2006); Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996). That is, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" Serna, 455 F.3d at 1151 (citing Jenkins, 81 F.3d at 994-95). Mere negligence is not enough. Serna, 455 F.3d at 1151.

"In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, [the] plaintiff must first show [that] the supervisor's subordinates violated the constitution." Serna, 455 F.3d at 1151. Then, the plaintiff must show that the supervisor "actively participated or acquiesced in the constitutional violation." Id. at 1152 (quoting Holland v. Harrington, 268 F.3d 1179, 1187 (10th Cir. 2001)). Acceptable evidence of participation or acquiescence includes "the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Serna, 455 F.3d at 1152 (quoting Holland, 268 F.3d at 1187). A supervisor's tacit authorization of the unconstitutional acts will also create liability. Serna, 455 F.3d at 1152.

To state an actionable § 1983 claim under a "failure to supervise" theory of liability, moreover, Plaintiffs must show that Agent Slaughter "had a duty to supervise." Id. at 1154. "Unless a supervisor has established or utilized an unconstitutional policy or custom, a

11

plaintiff must show that the supervisory defendant breached a duty imposed by state or local law which caused the constitutional violation." Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir.1988); Serna, 455 F.3d at 1154 (§ 1983 claim failed against Director of Prisons because plaintiff did not establish that Director had an actual duty to supervise on-the-ground operations of officers who allegedly committed excessive force violation). Again, "supervisory liability must be based upon active unconstitutional behavior and more than a mere right to control employees." Serna, 455 F.3d at 1151.

### C. TO PREVAIL ON THEIR ASSAULT AND BATTERY CLAIMS, PLAINTIFFS MUST SHOW THAT AGENT SLAUGHTER "CAUSED" THE ASSAULT AND BATTERY.

In their Complaint, all of the Plaintiffs asserted assault claims against Agent Slaughter under the New Mexico Tort Claims Act ("NMTCA"). Plaintiff Hetherington has also made a claim for battery. The NMTCA provides governmental entities and public employees with immunity from tort suits unless there is a specific waiver of that immunity set forth under the Act. See Weinstein v. City of Santa Fe, 121 N.M. 646, 649, 916 P.2d 1313, 1315 (1996). "The waiver provisions of the New Mexico Tort Claims Act require that the law enforcement officer 'caus[e]' the alleged tort." Sisneros, No. Civ. 02-1035 at 20; see also Armijo v. Department of Health & Environment, 108 N.M. 616, 618, 755 P.2d 1333, 1335 (Ct. App. 1989) (courts must strictly construe waiver provisions).

To establish a claim for assault, each Plaintiff must show evidence of an unlawful act, threat, or menacing conduct which causes the plaintiff to reasonably believe that he is in danger of receiving an immediate battery. See Romero v. Sanchez, 119 N.M. 690, 693, 895 P.2d 212, 215 (1995); Baca v. Velez, 114 N.M. 13, 15, 833 P.2d 1194, 1196 (Ct. App.), cert. denied, 114 N.M. 835 P.2d 80

(1992); UJI 14-303 NMRA.

To establish a claim for battery, Plaintiff HETHERINGTON must establish the following elements: (1) that Agent Slaughter intentionally touched or applied force to her; (2) that Agent Slaughter acted in a rude, insolent or angry manner; and (3) that Agent Slaughter's conduct was unlawful. See UJI 14-320 NMRA.

### D. PLAINTIFFS' CLAIMS OF FALSE IMPRISONMENT MUST FAIL AS AGENT SLAUGHTER'S AUTHORITY TO DETAIN THE OCCUPANTS OF THE PREMISES BEING SEARCHED WAS CATEGORICAL.

To prevail on their claims of false imprisonment, Plaintiffs must offer evidence that Agent Slaughter "caused" their alleged false imprisonment. See Sisneros, No. Civ. 02-1035 at 20. "False arrest or unlawful detention occurs when the 'facts available to [a] detaining officer would [not] warrant [a] person of reasonable caution to believe detention appropriate.'" Fuerschbach v. Southwest Airlines Co., 439 F.3d 1197, 1207 (10 Cir. 2006) (quoting Romero v. Sanchez, 119 N.M. 690, 693, 895 P.2d 212, 215 (1995)); Santillo v. New Mexico Department of Public Safety, 2007-NMCA-159, ¶12, 173 P.3d 6 ("The tort of false imprisonment occurs when a person intentionally confines or restrains another person without consent and with knowledge that he has no lawful authority to do so."), cert. denied, 2007-NMCERT-11, 173 P.3d 763. However, a defendant who possesses good faith and reasonable belief in the lawfulness of the action is not liable for false arrest. Romero, 119 N.M. at 694, 895 P.2d at 216 (citing Ryder v. State, 98 N.M. 316, 319, 648 P.2d 774, 777 (1982)). Moreover, the United States Supreme Court has held that police may detain the occupants of the premises being searched pursuant to a warrant. See Muehler v. Mena, 544 U.S. 93, 99 (2005) (stating that "[a]n officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed

13

by the seizure.'") (citing <u>Michigan v. Summers</u>, 452 U.S. 692, 705 n. 19 (1981)).

In this case, there is no evidence which shows that Agent Slaughter arrested any of the Plaintiffs. Even assuming that Agent Slaughter had a role in the temporary detention of each Plaintiff during the execution of the search warrant, such conduct does not support a false imprisonment claim. Agent Slaughter not only had a search warrant for the premises where Plaintiffs were employed, but he also had information that the dancers were engaged in prostitution and illegal narcotics and that the patrons were allowed to carry firearms inside the establishment. See MPSJ No. I, p. 4, ¶ 8. Under the circumstances, it was reasonable for Agent Slaughter to participate in the temporary detention of Plaintiffs during the execution of the warrant. See <u>Muehler</u>, 544 U.S. at 99.

Respectfully submitted,

ROBLES, RAEL & ANAYA, P.C.

By:   /s/ Terri Sauer Beach
      Terri Sauer Beach
      Attorney for Defendant Slaughter
      500 Marquette Ave., NW, Suite 700
      Albuquerque, New Mexico 87102
      (505) 242-2228 (telephone)
      (505) 242-1106 (facsimile)

I hereby certify that on this
  16th   day of November 2009, the
foregoing was electronically
served through the CM/ECF
system to the following:

Joe M. Romero, Jr., Esq.
1905 Lomas Blvd., NW
Albuquerque, New Mexico 87104
(505) 843-9776
(505) 224-9554 (facsimile)

Arlon L. Stoker, Esq.
P.O. Box 658
Farmington, New Mexico 87499-0658
(505) 326-0404
(505) 326-3636 (facsimile)


  /s/ Terri Sauer Beach
Terri Sauer Beach