IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SAMANTHA PERINO,
JEANNIE HETHERINGTON,
JESSICA DENNISON, and
JILL DUSENBERRY,

    Plaintiffs,

vs.                                    CIV No. 07-144 WDS/DJS

GLENN SLAUGHTER, in his individual and
official capacities with New Mexico State Police;
BOB MELTON, in his individual and official
capacities; JOHN DOES 1 THOROUGH 25, each in
their individual and official capacities; SAN JUAN
COUNTY, NM and its subsidiary the SAN JUAN
COUNTY SHERIFF'S DEPARTMENT; and
ANONYMOUS SOURCES 1 through 3,

    Defendants.
_____

                                                              Consolidated with

JESSICA DENNISON,

    Plaintiff,

vs.                                    No. CIV 08-00804 LH/ACT

GLENN SLAUGHTER, in his individual capacity,

    Defendants.

**AGENT SLAUGHTER'S RESPONSE TO PLAINTIFFS' AMENDED
MOTIONS FOR ATTORNEYS' FEES AND EXPENSES *[Docket Nos. 141, 142, & 143]***

    Defendant, Glenn Slaughter (*hereinafter* referred to as "Agent Slaughter"), through his

attorneys Robles, Rael & Anaya, P.C. (Luis Robles, Esq.), states the following for his Response to

Plaintiffs' Amended Motions for Attorneys' Fees and Expenses *[Docket Nos. 141, 142, & 143]*:

## LEGAL ARGUMENT

When applying for attorney's fees under section 1988, the burden is on Plaintiffs to prove that they are entitled to the fees that they have requested this Court to award. As explained in detail below, each Plaintiff brought 16 separate causes of action against Agent Slaughter. Combined, the four Plaintiffs had sixty-four claims against Agent Slaughter. At various times throughout the proceeding, sixty-two of Plaintiffs' claims were dismissed. At trial, the jury only awarded damages on two claims brought by Dusenberry.

With Plaintiffs having proven that Agent Slaughter illegally searched and falsely imprisoned Plaintiff Dusenberry, Agent Slaughter acknowledges that Plaintiffs are entitled to attorney's fees for a commensurate portion of the discovery and trial work which gave Dusenberry her modest victory. With the jury having awarded Dusenberry $5,000.00 in damages after Plaintiffs refused a $25,000.00 settlement opportunity at the eve of trial, however, this Court should reduce Plaintiffs' attorney's fee request accordingly. By proceeding to trial in this case, Plaintiffs' recovered 20% of what they would have received had they settled at the eve of trial.

Although Dusenberry modestly prevailed on her illegal search and false imprisonment claims, Plaintiffs failed to prove liability on any of the other numerous claims that Dusenberry brought against Agent Slaughter, but also on the numerous claims brought by her fellow Plaintiffs, Perino, Hetherington, and Dennison. Moreover, Plaintiffs failed to submit a sufficient factual record to support their claim for attorney's fees and expenses for attorney Joe Romero. For the reasons set

forth below, this Court should reduce Plaintiffs' request for attorneys' fees and expenses by 80%.[1]

Thus, Agent Slaughter requests that this Court reduce Plaintiffs' attorneys' fees and expense award from the amount requested ($82,370.78)[2] to $16,474.15.

**I.    WHEN APPLYING FOR ATTORNEY'S FEES UNDER SECTION 1988, THE BURDEN IS ON PLAINTIFFS TO PROVE THAT THEY ARE ENTITLED TO THE FEES THAT THEY HAVE REQUESTED THIS COURT TO AWARD.**

Pursuant to 42 U.S.C. § 1988:

> In any action or proceeding to enforce a provision of section[] 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988(b). "[T]here are two elements in deciding whether to award attorney's fees. First, the party seeking fees must qualify as a 'prevailing party.' Second, the fee itself must be 'reasonable.'" Phelps v. Hamilton, 120 F.3d 1126, 1129 (10th Cir. 1997) (quoting 42 U.S.C. § 1988(b)).

"The most useful starting point for determining the amount of a reasonable fee is the number

---

[1] Again, Plaintiff's attorney, Joe Romero, did *not* submit an itemized attorney's fee bill with his attorney's fee application. *See Docket No.s 141, 141-4, & 141-5.* Under Tenth Circuit law, "[t]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1249 (10th Cir. 1998) (quoting Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1201 (10th Cir. 1986)) (further citation omitted). Without an itemized bill to analyze, Agent Slaughter can not identify specific entries which do not warrant compensation. Instead, the absence of an itemized bill forces Agent Slaughter to ask for a percentage reduction.

[2] "Plaintiff seeks recompense for undersigned counsel, Joe M. Romero, Jr.'s fees in the amount of $53,153.49 (including New Mexico Gross Receipts tax), and $23,244.81 for counsel, Arlon L. Stoker as well as $5,972.48 (including tax) for the work done by undersigned counsel's contract paralegal, Brandon Cummings, as set forth below." *See Docket No. 143, p. 2.*

of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." Id. In other words, "[t]o determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998) (quotations omitted). "The lodestar calculation is the product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'" Id. (quotation omitted).

Once the court has adequate time records before it, "it must then ensure that the winning attorneys have exercised 'billing judgment.'" Case, 157 F.3d at 1250 (quoting Ramos v. Lamm, 713 F.2d 546, 555 (10th Cir. 1983)). "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." Id. "Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable." Id.; see also Hensley, 461 U.S. at 434 and 437 (counsel are expected to exercise their "billing judgment", "mak[ing] a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary"). In other words, the district court should exclude from this initial fee calculation hours that were not 'reasonably expended.'" Hensley, 461 U.S. at 434 (quotation omitted).

"After examining the specific tasks and whether they are properly chargeable, the district court should look at the hours expended on each task to determine if they are reasonable." Id. "The Ramos court suggested that among the factors to be considered were (1) whether the tasks being

4

billed 'would normally be billed to a paying client,' (2) the number of hours spent on each task, (3) 'the complexity of the case,' (4) 'the number of reasonable strategies pursued,' (5) 'the responses necessitated by the maneuvering of the other side,' and (6) 'potential duplication of services' by multiple lawyers. Roberts, 160 F.3d at 1281 (quoting Ramos, 761 F.2d at 554). "In this analysis, [the court should] ask what hours a reasonable attorney would have incurred and billed in the marketplace under similar circumstances." Id.

Finally, once the reasonableness of the fee is determined, the court must decide whether there are other factors that require the fee award to be adjusted upward or downward. One of the most significant factors is the "results obtained." Hensley, 461 U.S. at 434. "Where a plaintiff has obtained excellent results, the attorney should receive a fully compensatory fee, even though he did not prevail on every theory." Id. "[I]n some circumstances, [however,] even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all." Farrar v. Hobby, 506 U.S. 103, 115 (1992).

  **A.**  **WITH PLAINTIFFS HAVING PROVEN THAT AGENT SLAUGHTER ILLEGALLY SEARCHED AND FALSELY IMPRISONED DUSENBERRY, AGENT SLAUGHTER ACKNOWLEDGES THAT PLAINTIFFS ARE ENTITLED TO ATTORNEY'S FEES FOR A COMMENSURATE PORTION OF THE DISCOVERY AND TRIAL WORK WHICH GAVE DUSENBERRY HER MODEST VICTORY.**

In Farrar v. Hobby, 506 U.S. 103, 112 (1992), the Supreme Court held that "a plaintiff who wins nominal damages is a prevailing party under § 1988." See, e.g., Koopman v. Water District No. 1, 41 F.3d 1417, 1420 (10th Cir. 1994) ("It is clear that under Farrar v. Hobby, [the plaintiff] is a prevailing party because he was awarded nominal damages."). Once a court determines that a party

is a prevailing party, this Court must then determine what amount of reasonable attorney's fees should be awarded. See Phelps, 120 F.3d at 1130. "Although the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under Section 1988." Farrar, 506 U.S. at 114.

Agent Slaughter agrees that Dusenberry's limited success in this case warrants compensation. In its Judgment, this Court stated the following:

> 3.   In favor of Plaintiff Jill Dusenberry against Defendant Glenn Slaughter on the claim for illegal search;
>
> 4.   In favor of Plaintiff Jill Dusenberry against Defendant Glenn Slaughter on the state law claim for false imprisonment;
>
> * * *
>
> 6.   Plaintiff Jill Dusenberry was awarded $2,000.00 in compensatory damages and $3,000.00 in punitive damages.

See Docket No. 127, p. 1. As argued below, however, Plaintiffs must prove more than Dusenbery's limited success at trial to obtain attorney's fees under Section 1988.

### B.   WITH THE JURY HAVING AWARDED DUSENBERRY $5,000.00 IN DAMAGES AFTER PLAINTIFFS REFUSED A $25,000.00 SETTLEMENT OPPORTUNITY AT THE EVE OF TRIAL, THIS COURT SHOULD REDUCE PLAINTIFFS' ATTORNEYS' FEE REQUEST ACCORDINGLY.

"[I]n some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all." Farrar, 506 U.S. at 115. The most critical factor in determining the reasonableness of an attorney's fees award is the degree of success obtained. Id. In a civil rights action for compensatory and punitive damages, awarding only nominal damages highlights the plaintiff's failure to prove actual injury or any basis for awarding punitive damages. Id. "When a

plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." Id.

In Farrar, 506 U.S. at 107, the jury found that the defendant, Hobby, deprived Farrar of a civil right. The Fifth Circuit affirmed but determined that Farrar was entitled only to nominal damages against Hobby. Id. at 107. The Supreme Court held that the district court abused its discretion by granting Farrar attorney's fees based on his "technical" victory. Id. at 114. According to the Supreme Court: "Th[e] litigation accomplished little beyond giving petitioners the 'moral satisfaction of knowing that a federal court concluded that [their] rights had been violated' in some unspecified way." Id. (citation omitted). Thus, a technical vindication of one's constitutional rights alone is not enough to justify an award of attorney's fees under § 1988.

In her concurring opinion, Justice O'Connor indicated that, "[w]hen the plaintiff's success is purely technical or de minimus, no fees can be awarded. Such a plaintiff either has failed to achieve victory at all, or has obtained only a Pyrrhic victory for which the reasonable fee is zero." Id. at 117 (O'Connor, J., concurring). Justice O'Connor "established a three-part analysis 'to determine whether a prevailing party achieved enough success to be entitled to an award of attorney's fees.'" Brandau v. Kansas, 168 F.3d 1179, 1181 (10th Cir. 1999) (citations omitted) ((quoting Phelps, 120 F.3d at 1131) (adopting Justice O'Connor's framework)). "This framework requires the district court to determine the 'relevant indicia of success' by examining: (1) the difference between the judgment recovered and the judgment sought; (2) 'the significance of the legal issue on which the plaintiff prevailed'; and (3) 'the public purpose served' by the litigation." Id. (quoting Farrar, 506 U.S. at 121-22 (O'Connor, J., concurring)); Phelps, 120 F.3d at 1131.

7

In <u>Barber v. T.D. Williamson</u>, 254 F.3d 1223, 1230-31 (10th Cir. 2001), the Tenth Circuit clarified the second and third factors. The second factor -- "the significance of the legal issue on which the plaintiff claims to have prevailed" -- is similar to the first factor. <u>Id</u>. at 1230 (citing <u>Farrar</u>, 506 U.S. at 121 (O'Connor, J., concurring)). "'[T]he second factor . . . goes beyond the actual relief awarded [which is the focus of the first factor] to examine the extent to which the plaintiff[] succeeded on [his] theory of liability.'" <u>Barber</u>, 254 F.3d at 1231 (quoting <u>Phelps</u>, 120 F.3d at 1132).

In <u>Barber</u>, the Tenth Circuit also discussed the differing responses by the circuit courts on how to apply the third factor – "the accomplishment of a public goal." 254 F.3d at 1231. Some courts read the factor restrictively, that is, deeming it satisfied only when the victory has served some broader public purpose. <u>Id</u>. at 1231-32. Others "have looked at the third factor in more generous terms, concluding that a public goal is accomplished if the plaintiff's victory encourages attorneys to represent civil rights litigants, affirms an important right, puts defendants on notice that it needs to improve, and/or provokes a change in the defendant's conduct." <u>Id</u>. at 1232. The Tenth Circuit in <u>Barber</u> ultimately adopted a broader approach, but admonished that it should not be construed too liberally. <u>Id</u>. at 1233 (quoting <u>Farrar</u>, 506 U.S. at 122 (O'Connor, J., concurring)) (explaining that in <u>Farrar</u>, "no important right had been vindicated because it was not even clear what 'kind of lawless conduct . . . might be prevented'").

By proceeding to trial in this case, Plaintiffs' recovered 20% of what they would have received had they settled at the eve of trial. Although Dusenberry modestly prevailed on her illegal search and false imprisonment claims, Plaintiffs failed to prove liability on any of the other numerous claims that Dusenberry brought against Agent Slaughter, but also on the numerous claims

8

brought by her fellow Plaintiffs, Perino, Hetherington, and Dennison. For these reasons, this Court should reduce Plaintiffs' attorneys' fees and expenses by 80% or to $16,474.15.

### 1. BY PROCEEDING TO TRIAL IN THIS CASE, PLAINTIFFS' RECOVERED 20% OF WHAT THEY WOULD HAVE RECEIVED HAD THEY SETTLED AT THE EVE OF TRIAL.

"The first and most critical factor in determining the reasonableness of a fee award is the degree of success obtained." Phelps, 120 F.3d at 1132 (quotations omitted) (quoting Farrar, 506 U.S. at 114). "[A] substantial difference between the judgment recovered and the recovery sought suggests that the victory is in fact purely technical." Farrar, 506 U.S. at 121 (O'Connor, J., concurring). In Farrar, for example, the plaintiff sought $17 million from six defendants and after ten years of litigation he recovered "one dollar from the least culpable defendant and nothing from the rest . . . ." Id.

On November 23, 2009, Magistrate Judge Scott conducted a "settlement conference." *See Docket No. 114.* Magistrate Judge Scott asked the attorneys to present to their respective clients a $25,000.00 "settlement offer." Magistrate Judge Scott gave the parties until 12:00 pm on November 25, 2009 to accept the $25,000.00 "settlement offer."

Before Agent Slaughter received an answer from State Risk Management, Magistrate Judge Scott's chambers called Agent Slaughter's attorneys to inform them that Plaintiffs did *not* accept the settlement amount. Thus, the parties were to proceed to trial.

Like Farrar, "a substantial difference between the judgment recovered and the recovery sought suggests that [Dusenberry's] victory is in fact purely technical." Farrar, 506 U.S. at 121 (O'Connor, J., concurring). In cases such as this, this Court may "lawfully award low fees or no

9

fees" without calculating a lodestar. Id. at 115. Thus, the significant difference between the judgment recovered by Plaintiffs and the judgment sought by them warrants a substantial reduction of the attorneys' fees requested by Plaintiffs.

    **2.    ALTHOUGH DUSENBERRY MODESTLY PREVAILED ON HER ILLEGAL SEARCH AND FALSE IMPRISONMENT CLAIMS, PLAINTIFFS FAILED TO PROVE LIABILITY ON ANY OF THE OTHER NUMEROUS CLAIMS THAT DUSENBERRY BROUGHT AGAINST AGENT SLAUGHTER, BUT ALSO ON THE NUMEROUS CLAIMS BROUGHT BY HER FELLOW PLAINTIFFS, PERINO, HETHERINGTON, AND DENNISON.**

The second consideration in determining reasonable attorney's fees is "the significance of the legal issue on which the plaintiff claims to have prevailed." Farrar, 506 U.S. at 121 (O'Connor, J., concurring); see, e.g., Phelps, 120 F.3d at 1131. Moreover, in the Tenth Circuit, "the second factor . . . goes beyond the actual relief [which is the focus of the first factor] to examine the *extent* to which the plaintiff[] succeeded on [his] theory of liability." Barber, 254 F.3d at 1231 (quoting Phelps, 120 F.3d at 1132). In this case, Plaintiffs only succeed on two of their sixty-four claims.

    **a.    As a Result of Agent Slaughter's Pretrial Motions and Jury Verdict, this Court Dismissed the Vast Majority of the Claims Brought by Plaintiffs.**

In Hensley, the Supreme Court explained that where a plaintiff is deemed the "prevailing party," despite success on only some claims for relief, two considerations are important when awarding fees: (1) whether the plaintiff lost on claims that were unrelated to his successful claims; and (2) whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award[.]" Hensley, 461 U.S. at 434. The first consideration requires a court to determine whether the "plaintiff's claims for relief . . . involve a common core

10

of facts or [are] based on related legal theories." Id. at 435. The second consideration requires a court to determine the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id. The Supreme Court noted, however, that a fee reduction would be appropriate "if the relief, however significant, [was] limited in comparison to the scope of the litigation as a whole." Id. at 440.

In this case, four (4) Plaintiffs brought numerous federal and state law claims against Agent Slaughter: 1) Samantha Perino, 2) Jeannie Hetherington, 3) Jessica Dennison, and 4) Jill Dusenberry. See Docket No. 48, p. 1. Of the four (4) initial plaintiffs, only Dusenberry obtained a damages award. See Docket No. 127, p. 1. The three other Plaintiffs did not receive any compensation from the Court or the jury. See Docket No. 127, pp. 1-2.

In their Amended Complaint, Plaintiffs allege that Agent Slaughter violated their Fourth Amendment rights to be free from unreasonable searches, seizures and the use of excessive force. See Docket No. 48, ¶ 36(a). Plaintiffs also allege that Agent Slaughter violated their Fourteenth Amendment rights to substantive and procedural due process, as well as their right to privacy. See Docket No. 48, ¶ 36(b). Pursuant to the New Mexico Tort Claims Act, Plaintiffs claim that Defendants committed the torts of assault, battery, and false imprisonment. See Docket No. 48, ¶ 43-50.

In addition, Plaintiffs sued Agent Slaughter in his official capacity. See Docket No. 48, ¶ 7. When governmental officials, such as Agent Slaughter, are sued in their official and individual capacities for acts performed in each capacity, those acts are "treated as the transactions of two different legal personages." Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 543 n. 6 (1986)

(internal quotation marks omitted). Personal or individual capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law," while an official capacity suit is "only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (internal quotation marks omitted); Monell v. Dept. of Social Services, 436 U.S. 658, 690 n. 55 (1978) (same).

While acting in his official capacity, Plaintiffs contended that Agent Slaughter failed to properly train, supervise and discipline officers and supervisory personnel under 42 U.S.C. § 1983. *See Docket No. 48, ¶¶ 38-40.* Under the New Mexico Tort Claims Act, Plaintiffs also contended that Agent Slaughter failed to properly screen, hire, train, monitor, supervise and/or discipline employees within his agency. *See Docket No. 48, ¶¶ 43-49.*

In sum, each Plaintiff brought 16 separate causes of action against Agent Slaughter. Combined, the four Plaintiffs had sixty-four claims against Agent Slaughter. At trial, the jury only awarded damages on two claims brought by Dusenberry.

> **1)** **Plaintiffs Voluntarily Dismissed Their § 1983 Municipal and Supervisory Liability Claims and Their State Law Failure to Properly Screen, Hire, Train, Monitor, Supervise and/or Discipline Employees Claims Against Agent Slaughter.**

On January 7, 2008, Plaintiffs voluntarily dismissed the official capacity claims against Agent Slaughter. *See Docket. No. 32*. Therefore, Plaintiffs voluntarily dismissed their § 1983 municipal and supervisory liability claims and their state law failure to properly screen, hire, train, monitor, supervise and/or discipline employees claims against Agent Slaughter. Thus, the dismissal of Plaintiffs' municipal and supervisory claims warrants a fee reduction because Duesenberry's

verdict, however significant, "was limited in comparison to the scope of the litigation as a whole." Hensley, 461 U.S. at 440.

    **2) As a Result of the Filing of Pretrial Motions, this Court Dismissed Plaintiffs' New Mexico Constitution Claims, and Several Federal and State Law Claims.**

On March 5, 2008, Agent Slaughter filed Motion to Dismiss No. I in which he argued that the Court should dismiss Plaintiffs' claims based on Agent Slaughter's violation of their rights under the New Mexico Constitution. *See Docket. No. 50*. In a Memorandum Opinion and Order, this Court granted Agent Slaughter's motion and dismissed all of Plaintiffs' New Mexico Constitution claims. *See Docket. No. 66*.

On February 11, 2008, Agent Slaughter filed three partial motions for summary judgment:

1. Motion for Partial Summary Judgment No. I: Dismissal of Plaintiffs' Claim for Punitive Damages, Pre- and Post-Judgment Interest and Attorney Fees to the Extent such Claims are based on the Causes of Action Asserted under the New Mexico Tort Claims Act, *Docket No. 40*;

2. Motion for Partial Summary Judgment No. II: Dismissal of Claims based on Lack of Personal Participation and Qualified Immunity, *Docket No. 41*; and

3. Motion for Partial Summary Judgment No. III: Dismissal of Plaintiffs' Fourth Amendment Illegal Search, Seizure and Excessive Force Claims on the Basis of Qualified Immunity, *Docket No. 42*.

After reviewing these three motions, this Court granted in part and denied in part the motions:

  IT IS THEREFORE ORDERED that

      1.      All Plaintiff Dennison's claims against Defendant Slaughter are **DISMISSED**;

      2.      Defendant Slaughter's "Motion for Partial Summary Judgment No. I: Dismissal of Plaintiffs' Claim for Punitive Damages, Pre- and Post-Judgment Interest and Attorney Fees to the Extent such Claims are based on the Causes of Action Asserted under the New Mexico Tort Claims Act" (Doc. 40) is **GRANTED**;

      3.      Defendant Slaughter's "Motion for Partial Summary Judgment No. II: Dismissal of and otherwise being fully advised, finds that Defendant's MSJ No. I should be granted and that Claims based on Lack of Personal Participation and Qualified Immunity" **(Doc. 41)** and "Motion for Partial Summary Judgment No. III: Dismissal of Plaintiffs' Fourth Amendment Illegal Search, Seizure and Excessive Force Claims based on Qualified Immunity" **(Doc. 42)** are **GRANTED** in part and **DENIED** in part as follows:

      a.      Defendant Slaughter's request for summary judgment on Plaintiffs' § 1983 unlawful search and seizure claims is **DENIED** as to all Plaintiffs;

      b.      Defendant Slaughter's request for summary judgment on Plaintiffs' § 1983 excessive force claims, substantive and procedural due process claims, and privacy claims is **GRANTED** as to all Plaintiffs;

      c.      Defendant Slaughter's request for summary judgment on Plaintiff Dusenberry's and Plaintiff Perino's battery claims is **GRANTED**;

      d.      Defendant Slaughter's request for summary judgment on Plaintiff Hetherington's battery claim is **DENIED**;

      e.      Defendant Slaughter's request for summary judgment on Plaintiffs' assault claims is **DENIED** as to all Plaintiffs; and

      f.      Defendant Slaughter's request for summary judgment on Plaintiffs' false imprisonment claims is **DENIED** as to all Plaintiffs.

*See Docket. No. 67, pp. 33-34.* Thus, the dismissal of many of Plaintiffs' federal and state law

claims warrants a fee reduction because Duesenberry's verdict, "however significant, was limited in comparison to the scope of the litigation as a whole." Hensley, 461 U.S. at 440.

> 3) **At Trial, the Jury Found in Favor of Dusenberry on Two Claims but Found Against Dusenberry on Her Assault Claim and Against Perino and Hetherington on All of Their Claims.**

At trial, the three plaintiffs, Perino, Hetherington, and Dusenberry submitted the following claims to the jury:

1. Fourth Amendment illegal search claim;

2. State law false imprisonment claim; and

3. State law assault claim.

See Docket. No. 119, pp. 6-8. In its Verdict, the jury found that Agent Slaughter violated Dusenberry's Fourth Amendment right against illegal search and falsely imprisoned her. See Docket No. 123, pp. 1-4. The jury found in favor of Agent Slaughter on Dusenberry's assault claim and all of the other claims brought by Perino and Hetherington. Id. Thus, the dismissal of many of Plaintiffs' claims at trial warrants a fee reduction because Duesenberry's verdict, "however significant, was limited in comparison to the scope of the litigation as a whole." Hensley, 461 U.S. at 440.

> **C. PLAINTIFFS FAILED TO SUBMIT A SUFFICIENT FACTUAL RECORD TO SUPPORT THEIR CLAIM FOR ATTORNEY'S FEES AND EXPENSES FOR ATTORNEY, JOE ROMERO.**

As the party seeking an award of fees, Plaintiff must submit evidence supporting the hours worked and rates claimed. Hensley, 461 U.S. at 433; Clay v. Unified Sch. Dist. No. 233, 157 F.3d

1243, 1256-57 (10th Cir. 1998). The Tenth Circuit has noted that "[c]ounsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." <u>Case v. Unified School Dist. No. 233</u>, 157 F.3d 1243, 1250 (10th Cir. 1998). "A district court is justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time." <u>Id</u>.; <u>see also</u> <u>Robinson</u>, 160 F.3d at 1281 ("a district court may discount requested attorney hours if the attorney fails to keep 'meticulous, contemporaneous time records' that reveal 'all hours for which compensation is requested and how those hours were allotted to specific tasks'") (quotation omitted). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." <u>Hensley</u>, 461 U.S. at 433.

Although the Tenth Circuit has imposed the duty on Plaintiff to submit "meticulous, contemporaneous time records," Plaintiffs' attorney, Joe Romero, did *not* submit an itemized attorney's fee bill with his attorney's fee application. *See Docket No. 141, 141-4, & 141-5.* Instead, Mr. Romero submitted an invoice which only lists the following information:

| Total Hours | Subtotal | NMGRT | Total |
|---|---|---|---|
| 243 | $60,750.00 | $4,024.69 | $64,774.69 |

*See Docket No. 141-4.* None of the other pleadings filed by Plaintiffs contain any detail about Mr. Romero's billing in this case. *See Docket Nos. 137, 138, 139, 141, 142, & 143.*

Without an itemized bill to analyze, Agent Slaughter cannot identify specific entries which

do not warrant compensation. According to Tenth Circuit precedent, "a district court may discount requested attorney hours if the attorney fails to keep 'meticulous, contemporaneous time records' that reveal 'all hours for which compensation is requested and how those hours were allotted to specific tasks.'" Robinson, 160 F.3d at 1281. In the absence of an itemized bill for Mr. Romero's work, Agent Slaughter respectfully requests that this Court reduce Mr. Romero's fee award so that it is commensurate with the modest success obtained by Dusenberry.

**WHEREFORE,** Agent Slaughter respectfully requests that this Court enter an Order which provides for the following relief:

A. Denies Plaintiffs' Amended Motions for Attorneys' Fees and Expenses *[Docket Nos.141, 142, & 143]*;

B. Decreases Plaintiffs' attorneys' fees and expenses request by 80%, reducing Plaintiffs' attorneys' fee award from the amount requested $82,370.78 to $16,474.15;

C. Order all other relief that the Court deems just and proper.

Respectfully submitted,

ROBLES, RAEL & ANAYA, P.C.


By:    /s/ Luis Robles
       Luis Robles
       Attorneys for Defendant Slaughter
       500 Marquette Ave., NW, Suite 700
       Albuquerque, New Mexico  87102
       (505) 242-2228 (telephone)
       (505) 242-1106 (facsimile)

I hereby certify that on this 2nd day of February, 2010, the foregoing was electronically served through the CM/ECF system to all counsel of record:


 /s/ Luis Robles
Luis Robles