IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SAMANTHA PERINO,
JEANNIE HEATHERINGTON, and
JILL DUSENBERRY,

                              **Plaintiffs,**

vs.                                                                        CIV 07-144 WDS/DJS

GLENN SLAUGHTER,

                              **Defendant.**

## PLAINTIFF JILL DUSENBERRY'S REPLY IN SUPPORT OF HER MOTIONS FOR ATTORNEYS' FEES AND EXPENSES

Plaintiff Jill Dusenberry, by and through her attorneys, Joe M. Romero, Jr. and Arlon L. Stoker, hereby submits her Reply in support of her Motion for Attorneys' Fees (Docket #141 and 142). In support thereof, Plaintiff states:

**I. This Case was Never About a Large Verdict—It was About Vindicating Plaintiff's Rights Despite the Fact that Litigating in Defense of those Rights May Be Unpopular. This is Precisely the Type of Case the §1988 was Designed to Make Viable.**

In order to make the private attorneys general function of §1983 viable in cases in which a Plaintiff or a Plaintiff's claim might be unpopular, Congress enacted 42 U.S.C. §1988 rendering Defendants liable for attorneys fees in cases in which a Plaintiff prevailed. Defendant admits that Plaintiff Dusenberry prevailed, but asks that this Court award her attorneys a miniscule portion of their requested fees because they were only "modestly" successful in vindicating Plaintiff's Constitutionally-protected civil rights. Without arguing about whether there is in fact such a thing as "modestly" defending such rights, Plaintiff submits that Defendant's action—particularly refusing to offer a single dollar to settle this case at the settlement conference—as well as the nature and, indeed, the unpopularity of filing suit on behalf

1

of an exotic dancer demonstrate that this is exactly the type of case that Congress envisioned when passing §1988. There can be no doubt that Plaintiff's employment played a role in the Jury's assessment of damages. If this Court were to do as Defendant asks and deny Plaintiff's counsel a reasonable attorneys' fee, the net effect would be to encourage plaintiffs' lawyers not to prosecute case such as this one. It bears mentioning that the Jury did find that Defendant did knowingly violate Plaintiff's rights. Encouraging attorneys not to litigate cases in which there *was* a civil rights violation would be contrary to the intent of §§1983 and 1988.

**II. The $25,000 "Eve of Trial" Settlement Offer Did Not Provide for Attorneys' Fees. If It Had, It Would Have Been Accepted**

Defendant makes much of the "eve of trial" settlement negotiations engineered by the Court. He does not, however, take notice of the fact that the offer did not provide for fees for the two attorneys that worked on Plaintiff Dusenberry's behalf from the beginning of this case. Although Plaintiff respects the Court's attempt to broker an amicable resolution the simple fact is that $4,442.71 in fees (one-third of $25,000 plus New Mexico Gross Receipts Tax) per attorney was unreasonable. Furthermore, Defendant did not even bother to inform Plaintiff that he was willing to offer the $25,000 suggested by the Court. Instead he strategically and silently made a settlement offer that he knew the Plaintiff could not accept. If Defendant Slaughter had offered to resolve this case for $25,000 *before* Plaintiff was forced to incur many thousands of dollars in attorneys' fees, such a settlement offer may have been viable. Defendant did not do so—on the contrary, Defendant offered $0.00 to settle this case at the settlement conference. Furthermore, there is no doubt that, had Defendant's offer of settlement for $25,000 come *with* recompense for Plaintiff's attorneys, it would have been accepted. Defendant's counsel is well-known for his aggressive litigation and commensurate billing and there is no doubt that he received far more than $8,885.42 in fees to litigate this case. In fact, this Court has the power to inquire into the

precise amount Defendant paid his lawyer and, in the interest of fairness, should do so before reducing Plaintiff's attorneys' fees. Plaintiff's attorneys should not receive a fee that is not commensurate with that charged to a Defendant who was found liable for intentionally violating Plaintiff's Fourth Amendment rights.

**III. Defendant's Motion Should Not Be Granted on the Basis that Plaintiff Dusenberry Did Not File an Amended Motion for Attorneys' Fees on behalf of Joe M. Romero, Jr.**

Defendant complains that he was not afforded the opportunity to review attorney Joe M. Romero, Jr.'s itemized timesheet. This unfortunate error resulted not because Joe M. Romero, Jr. did not maintain the contemporaneous records required of him, but due to an Adobe Acrobat™ printing issue. Defendant, rather than seeking to honestly review the hours submitted—a review that would have required him to *notify* Plaintiff that only the final page of Joe M. Romero, Jr.'s hours were submitted electronically—seeks to capitalize on a technological error. This type of ambush can be fairly said to characterize Defendant's attorney's entire response and, indeed, his litigation tactics. Fair resolution has never been on this defendant's list of goals. Attorney Joe M. Romero, Jr.'s itemized timesheet is attached hereto as *Exhibit A* and Plaintiff has no objection to Defendant filing a surreply should he so desire.

**IV. Defendant's Creative Math is Based Upon a Typographical Error—He is Well Aware that Plaintiff Seeks a Total of $108,810.82 in §1988 Fees as well as Reimbursement for Her Costs.**

Defendant pretends that he has not seen Plaintiff's amended motion, which corrected a typographical error in Plaintiff's first Motion for Attorney's Fees for Attorney Arlon L. Stoker. As Defendant is aware, Plaintiff seeks $44,036.13 in attorneys' fees for Arlon L. Stoker (see Docket #142) and $64,774.69 for Joe M. Romero, Jr. (see Docket #141). The fact that Defendant references these filings in the title of his Response demonstrates that that he knows the fees being sought.

3

**V. This Case Drew Considerable Public Interest, which Demonstrates the Importance of such Litigation to the Community**

The newspaper articles, television news and other public comment genereated as a result of this case was substantial. This in itself demonstrates the importance of prosecuting these types of civil rights violations. Although it may have been difficult for a jury, or the public, to determine the damages that someone who takes some of her clothes off for a living suffered as a result of being ordered to do so by Defendant Slaughter, it is clear that a) the Jury understood that an important protection was violated and b) the general public has benefitted from discussing this action. It is unconscionable that Defendant, having aggressively—perhaps overly so—litigated this case and having undoubtedly read the same articles Plaintiff did and having seen the same newscasts as she now seeks to skip out on the feel bill due him. A "public goal is accomplished if the plaintiff's victory encourages attorneys to represent civil rights litigants, affirms an important right, puts defendants on notice that it needs to improve, and/or provokes a change in the defendant's conduct." Barber v. T.D. Williamson, 254 F.3d 1223, 1232 (10th Cir. 2001).

**WHEREFORE**, Plaintiff respectfully request that this Court grant the relief sought In her Motions for Attorneys' Fees.

        Respectfully submitted,

        /s/
By:    _____
        Joe M. Romero, Jr.
        Attorney for Plaintiff
        1905 Lomas Blvd NW
        Albuquerque, NM 87104
        (505) 843-9776
        (505) 224-9554 (facsimile)

I certify that a true copy of the foregoing was delivered to opposing counsel via the Court's CM/ECF document system on Friday, February 19, 2010.

/s/
_____
Joe M. Romero, Jr.